IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

   **Plaintiff,**

**v.**        //   **CRIMINAL ACTION NO. 1:11CR96**
            **(Judge Keeley)**

**GORDON MAYS, JR.,**

   **Defendant.**

### RESTITUTION ORDER

On April 4, 2012, the defendant, Gordon Mays ("Mays") pleaded guilty to one count of Accessing with Intent to View Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2252A(b)(2). At his sentencing, the Government sought restitution on behalf of "Vicky," an adult woman whose childhood abuse was depicted in the images viewed by Mays.[1] On October 23, 2012, the Court sentenced Mays to 78 months of imprisonment but postponed issuing a restitution order to permit further briefing in light of the Fourth Circuit's decision in United States v. Burgess, 684 F.3d 445 (4th Cir. 2012). The Court received the parties' briefs on November 14, 2012, and the matter is now ripe for decision.

Based on the reasoning in Burgess, the Court finds that Vicky is a victim for the purpose of § 2259, and that Mays proximately

---

[1] "Vicky" is a psuedonym used in this litigation and previous restitution proceedings. United States v. Burgess, 684 F.3d 445, 462 n.2 (4th Cir. 2012).

caused a portion of her injuries. Considering the role played by Mays in causing Vicky's ongoing injury, and the factual predicate offered by the government in support of her claim for damages, the Court finds by a preponderance of the evidence that Vicky is entitled to restitution in the amount of $1,925.

## I. Factual Background

On December 6, 2011, Gordon Mays, Jr. was indicted on three counts of transportation of child pornography, accessing with intent to view child pornography, and possession of child pornography. He later plead guilty to accessing with intent to view child pornography ("Count Two"). Mays committed the conduct alleged in Count Two on October 30, 2010, when he downloaded a batch of forty-three images and videos from a file sharing service named BearShare to a laptop computer. Among those forty-three files were nine videos depicting the sexual abuse of a child named Vicky by her father. According to testimony adduced at sentencing, Mays deleted the Vicky images at an undetermined time, but not later than February 15, 2011.

Still images and videos depicting Vicky's abuse are ubiquitous in the world of child pornography; a West Virginia State Police forensic investigator testified during Mays' sentencing that she finds images of Vicky in about one half of child pornography

investigations. Thus, the issue of what restitution is owed to her under § 2259 frequently arises. In nearly two hundred criminal cases for possession, distribution, or transportation of Vicky images in which courts have ordered restitution, the awards have ranged from $0 to $1,002,767.[2] (Dkt. Nos. 31 at 3, 31-4).

Restitution to Vicky arose as an issue in this case after forensic investigators identified her image among those downloaded by Mays. On June 30, 2012, Vicky's counsel submitted documentation[3]

---

[2] At sentencing, the Government supplied a data sheet listing 199 prior cases addressing restitution for Vicky. (Dkt. Nos. 31 at 3, 31-4). As Mays observes in his memorandum on restitution, there appears to be no mathematical correlation between the type and severity of the offender's crime and the size of the restitution award. (Dkt. No. 31 at 3).

[3] In support of her restitution request, Vicky submitted: a victim impact statement (December 2011) (Dkt. No. 33-1); a victim impact statement written by her mother (October 1, 2010) (Dkt. No. 33-2); a victim impact statement written by her step-father (October 1, 2010) (Dkt. No. 33-2); a psychological status report summary by Randall L. Green, Ph.D. ("Green"), clinical psychologist (written March 13, 2012 and based on interviews conducted on December 9, 2011 and January 20, 2012) (Dkt. No. 33-3 at 2); a forensic psychological examination by Green (written May 22, 2009, and based on an April 10, 2009 interview) (Dkt. No. 33-3 at 10); a psychological status report summary by Green (written December 2, 2009 and based on an interview conducted on November 6, 2009) (Dkt. No. 33-3 at 44); a psychological status report summary by Green (written July 5, 2010 and based on an interview conducted on May 29, 2010) (Dkt. No. 33-3 at 54); Green's curriculum vita (Dkt. No. 33-4); a transcript of a restitution hearing in case no. 4:08CR26, December 22, 2009 (Dkt. No. 33-5); a vocational assessment by Merrill A. Cohen ("Cohen"), Vocational Consultant and Case Manager (written March 10, 2010, and based on a February 5, 2009 interview) (Dkt. No. 33-6); Cohen's curriculum vita (Dkt. No. 33-7); a forecast of lost wages by Stan V. Smith, Ph.D. ("Smith") (written on November 10, 2010, and based on statements and reports prepared prior to October 30, 2010) (Dkt. No. 33-8); Smith's curriculum vita (Dkt. No. 33-9); two printouts of chat-room discussion threads about Vicky's sexual abuse and its availability (dated

to the United States Attorney concerning her alleged damages, claiming that the full amount of her losses amounted to $106,900 in future counseling, $147,830 in educational and vocational counseling needs, $722,511 in lost earnings, $46,170 in expenses paid in out of pocket costs for forensic evaluations, supporting records, and travel, and $297,815 in attorney's fees.

In total, Vicky estimates her gross damages from possession, distribution, and transportation of Vicky images to be $1,321,226.52. (Dkt. No. 33-13 at 2). As of June 30, 2012, she had received $563,519.94 in restitution payments, leaving a balance of $757,706.58 in unpaid damages. Id. At the Government's request, Vicky's attorney submitted a breakdown of damages Vicky allegedly suffered after October 30, 2010, the date on which Mays downloaded depictions of her abuse. (Dkt. No. 31-3). That submission reduced her estimated future counseling expenses to $98,150, and attorney

---

June 5, 2009, and January 13, 2010) (Dkt. No. 33-10); a declaration by her counsel in support of restitution (dated February 10, 2012) (Dkt. No. 33-11); and Ashleigh B. Boe, Note, Putting a Price on Child Porn: Requiring Defendants Who Possess Child Pornography Images To Pay Restitution to Child Pornography Victims, 86 N.D. L. Rev. 205 (2010). (Dkt. No. 33-12).

fees to $94,500.[4] Thus, in this case Vicky seeks an adjusted net amount of restitution of $496,375.66.

**II.**

When sentencing an offender for a violation of Title 18, Chapter 110, Sexual Exploitation and Other Abuse of Children, a court must issue a restitution order that covers the "full amount of the victim's losses." 18 U.S.C. § 2259(a). Those losses include:

(A) medical services relating to physical, psychiatric, or psychological care;
(B) physical and occupational therapy or rehabilitation;
(C) necessary transportation, temporary housing, and child care expenses;
(D) lost income;
(E) attorneys' fees, as well as other costs incurred; and
(F) any other losses suffered by the victim as a proximate result of the offense.

§ 2259(b).

"Victim" is defined as the "individual harmed as a result of a commission of a crime" under 18 U.S.C. § 2251 et seq. 18 U.S.C. § 2259(c). Pursuant to 18 U.S.C. § 3664(e), the Government bears the burden of demonstrating a victim's amount of loss by a preponderance of the evidence and not need to justify an award with

---

[4] To be clear, despite the holding in <u>Burgess</u>, Vicky has maintained throughout the proceedings in this case that no reduction in damages for educational and vocational counseling or lost income is warranted. <u>Id.</u>

"absolute precision." Burgess, 684 F.3d at 460. Courts must base any award of restitution on a "sufficient factual predicate." Id. See also United States v. Kearney, 672 F.3d 81, 100 (1st Cir. 2012) ("In calculating the dollar figure owed in restitution, the court need only make a reasonable determination of appropriate restitution.") (internal quotations omitted); United States v. Monzel, 641 F.3d 528, 540 (D.C. Cir. 2011) ("In a case such as this one, where the harm is ongoing and the number of offenders impossible to pinpoint, such a determination will inevitably involve some degree of approximation."). Issuance of a restitution order is mandatory. § 2259(b)(4).

In Burgess, the Fourth Circuit clarified the application of § 2259, holding that a defendant is only responsible for a victim's losses that he proximately caused. Id. at 459, Burgess reversed a district court decision that, without first making a finding of proximate harm, had ordered a defendant convicted of possession and receipt of 784 video recordings and 4,614 images of child pornography to pay Vicky $305,219.86 in restitution. In particular, Burgess cited with approval the decision in Monzel, where the Tenth Circuit rejected Vicky's arguments that not only could she collect the "full amount" of her damages from a single defendant, but also

that her victimizers were jointly and severally liable for that full amount. Id. at 458-59.

Burgess also held that, in cases such as Vicky's, in which numerous individuals viewed and distributed pornography featuring the victim, proximate harm could be found in the aggregate, rather than at the individual level. Id. at 459-60. In other words, "given the nature of the harm inflicted by purveyors and viewers of child pornography on their victims," a victim such as Vicky "need not prove that any single additional instance of possession of her image by itself increased her harm." Id. at 459, 460 (citing Kearney, 672 F.3d at 98). Therefore, in this case, pursuant to Burgess, the government need not prove the marginal amount of harm caused to Vicky by an offender like Mays, but only that the crimes of offenders like Mays have caused her continuing harm.

While Burgess decided the issues of proximate cause and joint and several liability, it did not direct district courts to follow any particular method to calculate "the quantum of loss attributable to the [defendant] for his participation in the [victim's] exploitation." Id. at 460. Rather, it instructed that the restitution award must be for the full amount of the loss attributable to the defendant, based on a "sufficient factual

predicate," and depend, "at least in part[,] on the role that defendant played with respect to [the victim's] exploitation." Id.

**II.**

Pursuant to these directives, in order to calculate the amount of restitution Mays owes Vicky, this Court must first determine whether she is a victim of Mays' crime. If so, it then must determine whether Mays proximately caused her losses.

The conclusion that Vicky is a victim of Mays's crime under § 2259(c) is straightforward. In New York v. Ferber, 458 U.S. 747, 759 (1982), the Supreme Court explained that child pornography is a "permanent record of the children's participation and the harm to the child is exacerbated by [its] circulation." Adopting that reasoning, the First Circuit and other courts that have considered the issue have found "that those depicted by child pornography are 'victims' of the crimes of possession and distribution within the meaning of § 2259(c)." Kearney, 672 F.3d at 95 (collecting cases). At Mays' sentencing, it was undisputed that he had possessed nine videos portraying Vicky's sexual abuse at the hands of her father. Because Mays accessed images of Vicky with the intent to view her childhood sexual abuse, she is his victim for the purpose of restitution under § 2259.

**RESTITUTION ORDER**

It follows that Mays also proximately caused a quantum of Vicky's losses. As in Burgess, where Vicky sought restitution for the possession of her image, Mays accessed images of Vicky's abuse with the intent to view child pornography. He used the visual memorialization of her childhood exploitation for his own titillation without concern for the fear and anxiety his actions might cause her. While Mays is only one of many to harm Vicky so, the pain he inflicted is real and calculable, not voided simply by the number of Vicky's tormentors. Burgess, 684 F.3d at 459-60.

A victim such as Vicky "knows she is being cut apart bit by bit" and "fears that she will succumb" to the "thousand tiny[, indelible] cuts" inflicted by the knowledge that a person likely sits – right now, even – at a computer viewing images of the worst moments of her life. United States v. Fast, No. 4:11CR3018, 2012 WL 2877676 (D. Neb. July 13, 2012); see also Burgess, 684 F.3d at 459 ("It is well established that children featured in child pornography are harmed by the continuing dissemination and possession of that pornography.") (citing Osborne v. Ohio, 495 U.S. 103, 111 (1990); and Ferber, 458 U.S. at 759). In sum, by intentionally viewing child pornography depicting Vicky's abuse, Mays proximately contributed to Vicky's ongoing torment and the damages for which she seeks restitution here.

**III.**

The remaining question deals with the "quantum of loss attributable to [Mays] for his participation in [Vicky's] exploitation." Burgess, 684 F.3d at 460. The Court concludes that a sufficient factual predicate exists to award the following amount of restitution:

- $1,575 for future psychological counseling;[5] and
- $350 for one hour of attorney's fees.

In reaching this decision, the Court has considered a number of factors, including the role played by Mays in Vicky's exploitation. Mays was not her initial abuser. He also has had no direct contact with Vicky, nor has he ever attempted to contact her. On October 30, 2010, however, he did access and view – although he did not distribute – nine videos depicting Vicky's abuse. He deleted those images from his laptop at some point prior to February 15, 2011; thus he possessed the images for approximately fourteen weeks.

At sentencing, the government submitted a data sheet of 199 prior cases addressing restitution for Vicky. (Dkt. Nos. 31 at 3,

---

[5] According to testimony presented at Mays' sentencing hearing, he downloaded nine separate videos depicting Vicky's abuse. As Vicky's own statement and the psychologist's updated summary indicate, Vicky continues to suffer mental and emotional trauma due to the knowledge that men like Mays possess and distribute such images. (Dkt. Nos. 33-1, Dkt. No. 33-3 at 2-9).

31-4). Of those 199 cases, nearly 78% involved receipt or possession, or possession alone, of images depicting Vicky's abuse. (Dkt. Nos. 31 at 3, 31-3). The remaining cases involved distribution or transportation. Because there is no evidence that Mays spread images of Vicky's abuse to others, his actions are comparable to those of the majority of Vicky's offenders. Thus, as Mays downloaded and viewed – but did not distribute – nine images of Vicky that he kept for a period not exceeding fourteen weeks, and because his crime is comparable to that of the majority of Vicky offenders, the Court concludes that his role in causing Vicky injury, while reprehensible, was limited.

It also is necessary to consider the relationship between Mays' limited role and Vicky's claim for damages. In weighing this, only Vicky's December 2011 victim impact statement (dkt. no. 33-1), the March 13, 2012 psychological report (dkt. no. 33-3 at 2-9), and the February 10, 2012 statement of her attorney's fees (dkt. no. 33-11) are relevant, inasmuch as these documents were prepared after Mays downloaded and accessed images of Vicky on October 30, 2010, and therefore document the damages she suffered after that date.[6] Logically, Mays could not have proximately caused any damage

---

[6] Although the November 19, 2010 vocational evaluation was prepared after the relevant date of the offense, the report is based upon information gathered before October 30, 2010.

to Vicky prior to that date; thus he cannot be held to account for those injuries. See Fast, 2012 WL 2877676 at *1.

Based on both Vicky's victim impact statement and the updated 2012 psychological report prepared by Dr. Randall L. Green ("Green"), the evidence preponderates that, following the date of Mays' offense, she suffered ongoing mental health issues due to the knowledge that individuals such as Mays were continuing to view images of her childhood abuse. Other courts have reached the same conclusion. See United States v. Brunner, No. F:08CR16, 2010 WL 148433, *2-*3 (W.D.N.C. Jan. 12, 2010) ("That the criminal behavior of Defendant in this case caused specific harm to [] Vicky is also well-documented by the victim impact statements and psychological reports submitted with the Government's motion for restitution."); United States v. Hicks, No. 1:09CR150, 2009 WL 4110260, *6 (W.D.N.C. Nov. 24, 2009) ("Dr. Green's report, coupled with the impact statements of Vicky . . . convince this Court by more than a preponderance that Hicks caused Vicky real and identifiable injuries which now require clinical therapy to redress.").

In her victim impact statement, Vicky reports ongoing fear, paranoia, sleeplessness, disassociation, and panic attacks caused by her awareness of the continued distribution and consumption of the images of her abuse. (Dkt. No. 33-1). Green's 2012

psychological report echoes Vicky's statement[7] and projects, to a reasonable degree of psychological probability, a lifetime of counseling expenses totaling up to $ 106,900, assuming a constant hourly rate of $175. (Dkt. No. 33-3 at 9).

Green's report, however, also makes clear that not all of Vicky's mental and emotional damages can be attributed to Mays and his ilk; it alludes, for example, to a recent exacerbation of Vicky's symptoms resulting from her voluntary testimony at restitution hearings. (Dkt. No. 33-3 at 8) ( "She has reported an exacerbation of such symptoms related to two restitution hearings in which she was directly involved."). As Vicky did not testify in this case, Mays could not have proximately caused the quantum of damages stemming from her participation in such hearings.

Moreover, Green's latest psychological report makes clear that, although Vicky is aware that she must continue her counseling, she had not participated in counseling sessions for nearly eight months. (Dkt. No. 33-3 at 8) That is a gap in treatment that Mays did not cause. At bottom, therefore, while the psychological report supports Vicky's claim that the actions of Mays and others like him have proximately caused her continuing

---

[7] "Symptomatically, [Vicky] is susceptible to blocking painful thoughts and feelings, somaticizing stress/anxiety, and disassociating." (Dkt. No. 33-3 at 8).

13

mental and emotional distress supporting the need for future counseling, it also counsels against a large award because Vicky's mental and emotional damages are attributable in part to other sources, such as her testimony at unrelated restitution hearings and gaps in her treatment.

Based on this information, the Court finds by a preponderance of the evidence that a sufficient factual predicate exists for a limited restitution award for future counseling expenses. Because it is undisputed that Mays downloaded nine separate videos depicting Vicky's abuse, the Court orders him to pay Vicky restitution equivalent to nine counseling sessions, at $175 per hour, or $1,575.

As to the issue of reasonable attorney's fees, it is obvious that Vicky's attorney has expended a great deal of effort over the years to establish her client's restitution claim. Nevertheless, the government has failed to particularize how those efforts relate to the facts in the case at bar. See dkt. nos. 33-11, 31-3.

Vicky's counsel did provide the government with exhibits supporting her overall restitution claim, a general written overview of her injuries, and a breakdown of her injuries incurred after the date of Mays' offense. Based on those submissions, and in particular the uniqueness of the latter two in relation to the case

at bar, the Court concludes that the evidence preponderates in favor of a finding that Vicky's attorney expended at least one hour of time to address the harm that Mays proximately caused her client, and therefore awards $350, or one hour of attorney's fees. See dkt. no. 33-11 at 7).

**IV.**

The Court recognizes that its award of restitution does not adopt any of the amounts sought by the parties: Vicky requested $496,375.66 (dkt. no. 31-3), an amount she adjusted to represent only damages incurred after Mays' offense and for payments already received from other offenders; the government requested $3,000 as a "baseline representation" of the loss attributable to the average Vicky defendant[8] (Dkt. No. 32 at 4); Mays, claiming that the government failed entirely to carry its burden of establishing any amount by a preponderance of the evidence, argued that an award of restitution was barred. (Dkt. No. 31 at 4).

To hold Mays liable for all of her remaining damages, as Vicky suggests, would violate the proximate cause requirement of <u>Burgess</u>, while the government's attempt to hold Mays accountable for the quantum of loss caused by a fictional "average" offender's

---

[8] The United States urges this Court to divide the total amount of Vicky's losses ($1,076,743.13) by the number of convicted offenders required to pay restitution, or 300, to calculate each offender's average "share" of Vicky's damages.

exploitation would not account for the harm Mays proximately caused Vicky. Burgess, 683 F.3d at 460; Tallent, 2012 WL 2580257 at *12. Furthermore, the government's proposed averaging approach "will gradually reduce the amount of restitution to be paid until a defendant is required to pay almost nothing," thereby resulting in inequitable awards among offenders over time. Tallent, 2012 WL 2580257 at *12. Finally, based on the evidence adduced in this case, Mays' argument that the government has failed to prove that Mays proximately caused some quantum of harm to Vicky is unsupported. The government has amply documented Vicky's continuing harm proximately caused by the knowledge that every day strangers, such as Mays, possess and view images of her abuse. Despite the failure of the parties' proposals to adequately account for the limited role Mays played in Vicky's ongoing exploitation, an award of restitution is undoubtedly justified. By narrowing Vicky's damages to the time after Mays' criminal acts, and then further reducing those damages based on the role Mays played in adding to her torment and anguish, the Court's award of restitution is supported by a sufficient factual predicate.

## CONCLUSION

Recognizing that the § 2259 restitution calculation involves "some degree of approximation", Monzel, 541 F.3d at 540, and that

**USA V. GORDON MAYS, JR.**                                           **1:11CR96**

**RESTITUTION ORDER**

a court need not justify an award with "absolute precision," Burgess, 684 F.3d at 460, pursuant to 18 U.S.C. § 2259, and for the reasons discussed in this memorandum opinion, the Court **ORDERS** the defendant, Gordon Mays, to pay Vicky restitution in the amount of $1,925 ($1,575 for future counseling expenses and $350 for one hour of attorney fees), and directs the Clerk to transmit copies of this Order to counsel of record.

DATED: December 21, 2012

                                                /s/ Irene M. Keeley
                                                IRENE M. KEELEY
                                                UNITED STATES DISTRICT JUDGE